UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
------------------------------------------------------------X
MERLE ZAMBONI, as personal
representative of the ESTATE OF ROBERT
HOOVER,

                Plaintiff,

  - against -

R.J. REYNOLDS TOBACCO COMPANY,
et al.,

                Defendants.
------------------------------------------------------------X

<u>**OPINION AND ORDER**</u>

3:09-cv-11957 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        In advance of trial on individual liability, plaintiff — Merle Zamboni, spouse of decedent Robert Hoover and personal representative of his estate — and defendants R.J. Reynolds, Phillip Morris, and Lorillard Tobacco have filed various motions *in limine*. This Opinion resolves these motions.

**I.    BACKGROUND**

        This case arises out of *R.J. Reynolds Tobacco Co. v. Engle*,[1] a state class action brought in 1994 by smokers seeking damages for smoking-related medical issues. Following class certification, the trial court divided the litigation into phases. In Phase I, the jury returned a verdict in favor of the class on all

---

[1]    672 So.2d 39 (Fla. 3d DCA 1996).

claims and determined that the class was entitled to punitive damages. In Phase II, the jury found that certain class representatives were entitled to compensatory damages, and awarded one hundred and forty five billion dollars in class-wide punitive damages.[2] Phase III was earmarked for determinations of causation and damages in individual cases.[3] Those are the issues presently before the Court — in the case of Robert Hoover, who died of smoking-related diseases on October 26, 1992.[4]

## II. LEGAL STANDARD

### A. Relevance and Prejudice

Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[5] Evidence that fails to satisfy this standard — irrelevant evidence — is always inadmissible.[6] Even relevant evidence, however, will not be admitted if "its probative value is

---

[2] *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1256-57 (Fla. 2006) ("*Engle*").

[3] *See Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 422 (Fla. 2013) ("*Douglas*").

[4] *See* Amended Complaint With Jury Demand (Dkt. No. 7).

[5] Fed. R. Evid. 401.

[6] *See* Fed. R. Evid. 402.

substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[7]

### B. Lay Witness Testimony

Under Rule 701, lay witness testimony is "limited to [opinions] that [are]" — *inter alia* — "not based on scientific, technical, or other specialized knowledge."[8]

### C. Hearsay

Hearsay evidence, which is defined as any out of court statement "offer[ed] . . . to prove the truth of the matter asserted,"[9] is presumptively inadmissable. But the presumption can be overcome, and the hearsay evidence admitted, if it qualifies for one of the exceptions enumerated in Rule 803.[10]

## III. DISCUSSION

Defendants have filed six motions *in limine*, and plaintiff has filed one. The plaintiff's motion, however, is mooted by the fact the my individual rules

---

[7]  Fed. R. Evid. 403.

[8]  Fed. R. Evid. 701(c).

[9]  Fed. R. Evid. 801(c)(2).

[10]  *See* Fed. R. Evid. 803.

-3-

prohibit attorney voir dire. Therefore, this Opinion only addresses defendants' motions *in limine*.[11]

### A.    Lay Testimony About Addiction

Defendants seek to preclude the decedent's family members — including plaintiff — from testifying about the decedent's alleged addiction to cigarettes. Defendants argue that "[w]hether a person was addicted [to cigarettes] is a matter of expert medical diagnosis," and that it therefore falls "beyond the ken of a lay witness."[12] According to plaintiff, this position misstates the law. Under Rule 701, lay witnesses are not "prevent[ed] . . . from offering an opinion about addiction merely because the term has a medical meaning."[13] Rather, the "difference between lay witness opinion and expert opinion is not the terminology

---

[11]    One of defendants' motions *in limine* is also moot, due to plaintiff's stipulation that she will "not elicit an opinion from Dr. Burns during [the liability phase] of the proceedings concerning the heightened risk of adenocarcinoma due to changes in cigarette design." Plaintiff's Opposition to Defendants' Case-Specific Motions in Limine ("Pl. Opp."), at 2. Plaintiff has reserved the right, nonetheless, "to offer [Dr. Burns's] testimony in [the punitive damages phase] of the proceedings, should one occur, subject to the Court's further evidentiary rulings." *Id.* Defendants retain the right to object to the admission of Dr. Burns's testimony during the punitive damages phase, should plaintiff elect to introduce it.

[12]    Defendants' Memorandum in Support of Their Case-Specific Motions in Limine ("Def. Mem."), at 8.

[13]    Pl. Opp. at 4.

used, but the 'nature of the testimony,'"[14] which means that a lay witness "*may* address a technical subject," but the "opinion [must be] based on firsthand observation."[15]

The right answer lies in the middle. Plaintiff is correct that lay witness testimony is not precluded just because the topic — addiction — is technical in nature. But neither does this make every lay opinion about addiction admissible. Rather, as plaintiff's own formulation suggests, Rule 701 limits lay testimony about addiction to firsthand observations — *i.e.*, the observations themselves, as opposed to inferences *drawn from* observations.

Many of plaintiff's examples are illustrative. For instance, plaintiff calls attention to testimony from her own deposition, where she indicated that her husband "hid the fact that he was still smoking cigarettes [even after] [his] lung surgery,"[16] that he "[woke-up] in the middle of the night to smoke cigarettes,"[17] and that when he "[tried] to quit smoking . . . he got very cranky and fussy."[18] All three

---

[14]   *Id.* at 4-5 (quoting *United States v. Bautista*, 558 Fed. App'x 874, 875 (11th Cir. 2014)).

[15]   *Id.* at 5 (emphasis added).

[16]   Pl. Opp. at 6.

[17]   *Id.*

[18]   *Id.* at 7.

of these observations — because they are just observations — are admissible. What would be inadmissible under Rule 701 is testimony that extrapolates from these observations to make claims about the nature or experience of addiction. For example, plaintiff's deposition testimony also includes claims about her husband "crav[ing]" cigarettes,[19] and about smoking being outside of his control.[20] Statements like these violate Rule 701 because they reach beyond "firsthand knowledge or observation."[21] Although the statements are *based on* firsthand knowledge or observation, they require an inferential leap. It is the province of the jury to draw inferences based on the evidence admitted at trial. Accordingly, plaintiff may not opine that her husband was addicted to cigarettes.

## B. Indirect Evidence of Addiction

Defendants also move to exclude two sources of indirect evidence of addiction — (1) evidence that the decedent suffered from heart disease and pulmonary disease, but that he continued to smoke regardless, and (2) evidence that the decedent was told by his doctors that smoking was causing health problems, but, once again, that he continued to smoke regardless. Defendants

---

[19] Def. Mem. at 8 (citing to the relevant portions of the deposition testimony).

[20] *See id.* (citing to the relevant portions of the deposition testimony).

[21] Fed. R. Evid. 701, Adv. Comm. Notes.

argue that the first source of evidence is prejudicial, and that the second is hearsay.

### 1.   Other Smoking-Related Diseases

While the decedent's decision to keep smoking after the onset of his heart disease and pulmonary disease *is* probative of addiction, defendants correctly note that introducing this evidence "might [] mis[lead] [the jury] into concluding that . . . they are permitted to award damages" on the basis of smoking-related diseases not at issue in the case.[22]

Weighing both considerations, I conclude that plaintiff is permitted to introduce evidence of other smoking-related diseases — but subject to two caveats. *First*, plaintiff may not name the diseases. There is no reason, given plaintiff's evidentiary purpose, the jury needs to be told that the diseases were chronic obstructive pulmonary disease and coronary heart disease *in particular*. Rather, all that needs to be established is (1) that the decedent was aware that he had developed smoking-related medical issues, but (2) that he continued to smoke anyway. Plaintiff is limited, therefore, to describing the pulmonary disease and heart disease as "smoking-related medical issues" — and prohibited from introducing any evidence about the diseases to suggest what they are. *Second*, plaintiff may only introduce evidence of other smoking-related diseases in a

---

[22]   Def. Mem. at 18.

manner that bears directly on addiction. Plaintiff may not introduce details about the symptomatology or prognosis of the diseases, about *how* smoking causes the diseases, or about the impact that continued smoking, after the onset of the diseases, had on decedent's symptoms.

### 2.     Conversations Between the Decedent and His Doctor

I also agree with plaintiff that the decedent's decision to continue smoking after being warned by his doctor about adverse medical consequences is probative of addiction. Defendants argue that evidence drawn from conversations between the decedent and his doctors is inadmissible hearsay not subject to any exception. But evidence is only hearsay if it is "offer[ed] . . . to prove the truth of the matter asserted."[23] Here, plaintiff seeks to introduce evidence of what the decedent heard from his doctor *not* to demonstrate the truth of the doctor's statement, but rather, to demonstrate that the decedent had been put on notice — by a medical expert — that his smoking was causing health problems. Plaintiff's point is that people tend not to flout a doctor's recommendations — so if someone *does* flout a doctor's recommendations, there is usually an explanation. This point does not turn on the accuracy of the medical advice. It turns on the fact that the medical advice was offered at all. When introduced for the latter purpose,

---

[23]     Fed. R. Evid. 801(c)(2).

evidence drawn from conversations between the decedent and his doctor would not be hearsay.[24]

Though they are somewhat unclear, the parties' papers also appear to contemplate the possibility of plaintiff testifying about *her* opinion — as opposed to a doctor's opinion — that smoking caused the decedent's medical issues. That evidence is inadmissible under Rule 701. For the same reasons that plaintiff is barred from testifying about the nature and cause of addiction, she is also barred from testifying about the nature and cause of lung cancer. Moreover, the rationale behind introducing a doctor's medical advice — that the decedent's choice to ignore the advice tends to show addiction — does not apply to a layperson's medical advice. Even if plaintiff did, in fact, hold the view that smoking is what caused the decedent's medical problems, and even if she did, in fact, share that view with her late husband, his decision to disregard her view does not suggest an uncontrollable compulsion to smoke. It suggests that plaintiff, as a layperson, was

---

[24] It is important to note, however, that evidence about the content of conversations between the decedent and his doctor *would* be hearsay (and thus inadmissible) if plaintiff came by the evidence second-hand. If plaintiff was not there when the conversation occurred — if, for example, the decedent recounted the conversation to plaintiff after the fact — introducing evidence about the conversation would require plaintiff to testify as to the truth of an out-of-court statement made by another person. That is exactly what Rule 801 disallows. Thus, evidence drawn from conversations between the decedent and his doctors is only admissible insofar as plaintiff witnessed or heard the conversation herself.

not equipped to dispense medical advice.

### C.    Marketing of Cigarettes to Minors

Defendants also move to preclude evidence related to the marketing of cigarettes to minors, on the grounds that it is irrelevant or, in the alternative, unfairly prejudicial.  At this juncture, the motion eludes full resolution because the parties disagree about whether plaintiff can show that the decedent *was* a youth smoker.  Plaintiff thinks she can; defendants think not.  My holding is limited, therefore, to a conditional statement.  If plaintiff can demonstrate that the decedent was a youth smoker, then cigarette advertisements directed to minors are relevant to this case — but *only* to the extent that a given advertisement first appeared when the decedent was still a minor.  Advertisements that appeared after the decedent turned eighteen are irrelevant, and therefore inadmissible.[25]

### D.    David Hoover's Emotional Distress

---

[25]    Plaintiff suggests that *all* cigarette marketing to minors, regardless of when it first appeared, is relevant to punitive damages because it goes to whether defendants acted "reprehensibl[y]." Pl. Opp. at 12.  This argument fails.  As the Supreme Court has explained, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm Mut. Auto Ins. v. Campbell*, 538 U.S. 408, 422-23 (2003). Here, defendants face liability for, *inter alia*, their failure to warn a specific class of people about the health risks associated with smoking — *not* for their general approach to product promotion.  Allowing plaintiff to introduce evidence of youth marketing across the board could inspire the jury to punish defendants for their "unsavory [] business." *Id.* at 423. The Supreme Court has made clear that such punishment is improper — even at the punitive damages stage. *See id.* at 422-23.

Finally, defendants seek to preclude plaintiff from introducing evidence of emotional stress suffered by the decedent's adult son, David Hoover. Plaintiff concedes that, as a matter of law, Hoover's emotional suffering does not form the basis of any damage claims here.[26] Nevertheless, plaintiff argues that Hoover's emotional suffering is still relevant to this case, because it is probative of *plaintiff's* emotional suffering. In essence, if a death in the family is emotionally difficult for one relative, it is likely to be emotionally difficult for another.

Assuming, *arguendo*, that plaintiff's relevance argument is sound, introducing evidence of Hoover's emotional distress would be unfairly prejudicial to defendants. According to plaintiff, concerns about prejudice are misplaced because "[t]he jury will be instructed regarding the proper basis for awarding wrongful death damages, and defendants offer no reason to doubt that the jury will follow those instructions."[27] But defendants *have* offered such a reason — and in any event, the reason is obvious. Allowing jurors to hear poignant evidence about harm suffered by Hoover is likely to "confuse them," or, similarly, to "incite

---

[26]  *See* Pl. Opp. at 9.

[27]  *Id.* at 10.

[them] to find against defendants or award damages on grounds that lack any legal basis."[28]

Moreover, the possibility of a limiting instruction does not cure the problem. The point of Rule 403 — the reason why courts must balance probative value against prejudicial effect — is that certain types of evidence can distort the jury's view of a case *regardless* of what instruction it receives. For support, plaintiff invokes an old case in which the Fifth Circuit reasoned that in "[deciding] whether to exclude evidence on grounds of [] prejudice, consideration should be given to the probable effectiveness . . . of a limiting instruction."[29] Indeed it should. But pointing out that courts should consider the effectiveness of limiting instructions begs the question. There is ample reason here to think that a limiting instruction will *not* be effective. Testimony about David Hoover's emotional distress runs an acute risk of prejudice. It is therefore precluded.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to preclude lay witness testimony about addiction is GRANTED in part and DENIED in part; defendants' motion to preclude plaintiff's testimony regarding conversations between the

---

[28] Def. Mem. at 12.

[29] *United States v. Beechum*, 582 F.2d 898, 917 (5th Cir. 1978).

decedent and his doctor is DENIED to the extent that plaintiff has first-hand knowledge of such conversations, subject to the caveat that the testimony can only be offered to prove addiction; defendants' motion to preclude testimony about smoking-related diseases not at issue in this case is GRANTED in part and DENIED in part; defendants' motion to preclude evidence of cigarette advertising to minors in GRANTED in part and DENIED in part; and defendants' motion to preclude evidence of David Hoover's non-economic suffering is GRANTED.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
January 13, 2015

<div style="text-align: center;">**-Appearances-**</div>

**For Plaintiff:**

Charlie E. Farah, Jr., Esq.
Farah & Farah, PA
3rd Floor
10 W. Adams St
Jacksonville, FL 32202
(904) 807-3180

Lance V. Oliver, Esq.
Donald A. Migliori, Esq.
Elizabeth C. Ward, Esq.
Frederick C. Baker, Esq.
James W. Ledlie, Esq.
Joseph F. Rice, Esq.
Lisa M. Saltzburg, Esq.
Mathew Jasinski, Esq.
Michael J. Pendell, Esq.
Nathan D. Finch, Esq.
Patrick G. Maiden, Esq.
Rebecca M. Deupree, Esq.
Robert T. Haefele, Esq.
Sara C. Bryant, Esq.
Elizabeth S. Smith, Esq.
Motley Rice, LLC
28 Bridgeside Blvd
Mount Pleasant, SC 29464
(401) 457-7709

Elizabeth J. Cabraser, Esq.
Kevin R. Budner, Esq.
Richard M. Heimann, Esq.
Robert J. Nelson, Esq.
Sarah R. London, Esq.
Kenneth S. Byrd, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP

29th Floor
275 Battery Street
San Francisco, CA 94111-3339
(415) 956-1000

Norwood S. Wilner, Esq.
Stephanie J. Hartley, Esq.
The Wilner Firm, PA
2nd Floor
444 E. Duval St
Jacksonville, FL 32202
(904) 446-9817


**For Defendant R.J. Reynolds:**

David M. Monde, Esq.
Edward M. Carter, Esq.
John F. Yarber, Esq.
Jose A. Isasi, Esq.
Stephanie E. Parker, Esq.
Jones Day
Suite 800
1420 Peachtree St NE
Atlanta, GA 30309
(404) 581-8486

David C. Reeves, Esq.
Joseph W. Prichard, Jr., Esq.
Robert B. Parrish, Esq.
Moseley, Prichard, Parrish, Knight & Jones
Suite 200
501 W. Bay St
Jacksonville, FL 32202
(904) 356-1306


**For Defendants R.J. Reynolds and Philip Morris:**

James B. Murphy , Jr., Esq.
Terri L. Parker, Esq.
Shook, Hardy & Bacon, LLP
Suite 2900
100 N. Tampa St
Tampa, FL 33602
(813) 202-710

Dana G. Bradford, Esq.
Smith, Gambrell & Russell, LLP
Suite 2600
50 N. Laura St
Jacksonville, FL 32202
(904) 598-6100

Joshua R. Brown, Esq.
Greenberg Traurig, LLP
450 S. Orange Ave - Ste 650
PO Box 4923
Orlando, FL 32802-4923
(407) 420-1000


**For Defendant Philip Morris:**

Judith Bernstein-Gaeta, Esq.
Keri L. Arnold, Esq.
Thomas W. Stoever , Jr., Esq.
M. Sean Laane, Esq.
Maura McGonigle, Esq.
Arnold & Porter, LLP
555 12th St NW
Washington, DC 20004-1206
(202) 942-5497

Luis E. Suarez, Esq.
Mark J. Heise, Esq.
Devin Freedman, Esq.
Steven W. Davis, Esq.
Boies, Schiller & Flexner, LLP
Suite 2800
100 SE 2nd St
Miami, FL 33131
(305) 539-8400


**For Defendant Lorillard Tobacco:**

Aviva L. Wernic, Esq.
Rafael Cruz-Alvarez, Esq.
Hughes, Hubbard & Reed, LLP
Suite 2500
201 S. Biscayne Blvd
Miami, FL 33131-4332
(305) 358-1666

John Andrew DeVault III, Esq.
Patrick P. Coll, Esq.
Bedell, Dittmar, DeVault, Pillans & Coxe, PA
The Bedell Bldg
101 E. Adams St
Jacksonville, FL 32202
(904) 353-0211